IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

March 21, 2012

RE: RANDY CARTER V. SHERRIFF JACK PARKER, ETAL
CA No. 11-7485

## NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Angell, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge.**

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By: 
LINDA V. JERRY, Deputy Clerk

cc: HIMEBAUGH
OBRECHT

Courtroom Deputy to Judge Schiller

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RANDY CARTER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SHERIFF JACK PALMER, et al. | : | NO. 11-7485 |

**ORDER**

AND NOW, this           day of                        , 2012, upon consideration of the pleadings and the record herein, and after review of the Report and Recommendation of M. Faith Angell, United States Magistrate Judge, is ti hereby **ORDERED** that:

1. The Report and Recommendation is **APPROVED AND ADOPTED.**

2. The Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. §2254, is **DENIED AND DISMISSED WITHOUT PREJUDICE for failure to exhaust available state court remedies.**

There is no probable cause to issue a certificate of appealability.

BY THE COURT:

_____
BERLE M. SCHILLER, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDY CARTER | :     CIVIL ACTION |
| v. | |
| SHERIFF JACK PALMER, et al. | :     NO. 11-7485 |

### REPORT AND RECOMMENDATION

M. FAITH ANGELL                                                                                                                                           March 20, 2012
UNITED STATES MAGISTRATE JUDGE

Presently before this court is a counseled Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner. Petitioner Randy Carter is currently incarcerated at a correctional facility in Cocoa, Florida, where he is serving a term of imprisonment of twenty (20) years to forty (40) years for attempted murder and a consecutive term of incarceration of nine (9) to eighteen (18) years for aggravated assault. For the reasons which follow, it is recommended that Mr. Carter's habeas claims be denied and dismissed without prejudice for failure to exhaust state remedies.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The Court of Common Pleas of Northampton County set forth the background of this case as follows:

> At approximately 2:00 a.m. on October 21, 2007, the La Casablanca Bar and Restaurant in Bethlehem was closing for the night, and about

---

[1] In preparing this Report and Recommendation, I have reviewed the following documents: Mr. Carter's Petition for Writ of Habeas Corpus by a Person in State Custody, and his Memorandum of Law in Support of his Habeas Corpus Petition; the Answer and Memorandum of Law of the District Attorney of the County of Northampton, Pennsylvania, to the Petitioner's Petition for Writ of Habeas Corpus, inclusive of all exhibits thereto, and the state court record.

250 patrons, including the [petitioner] and victim in this case, exited the club. In the street just beyond the club's parking lot, the [petitioner] and at least one other person severely beat and stabbed Mr. Michael Parker. During the assault, Mr. Parker was knocked to the ground while the [petitioner] continued to punch, kick, and stab him. In a chilling moment near the end of the attack, the [petitioner] stopped the beating, took several steps back away from Mr. Parker, ensured that there was a clear path, and then moved forward, kicking Parker in the head. Three of Mr. Parker's friends were also attacked by the [petitioner] as they ran to his defense.

Following the attack, the [petitioner] and an accomplice, Antoine Williams, attempted to flee in a car. However, their vehicle struck a parked police cruiser and attracted the attention of officers at the scene. When City of Bethlehem Police Officer Rodney Bronson approached the car, he observed the [petitioner], in the passenger seat, sweating profusely, with "what appeared to be blood on his lips, his knuckles and his forearm." N.T., 9/9/08, at 234. As officers removed the [petitioner] from the car, a bloody knife fell to the street from beneath him, and a puncture wound was discovered on his backside. The [petitioner] was accompanied by officers to the local hospital for treatment of his wounds. While at the hospital, the [petitioner] told officers that he was "mad drunk" that night. He admitted to being involved in a fight, but he could not remember many additional details. N.T., 9/9/08, at 279.

As a result of the attack, Mr. Parker was stabbed fifteen times, including once in the eye. He would ultimately lose that eye and require a prosthetic replacement. Mr. Parker's other wounds necessitated numerous staples and stitches in his stomach, arms, and back.

Two of the friends who ran to Mr. Parker's defense also suffered multiple stab wounds. Mr. Floyd Lovelace was stabbed five times in the chest and back. Mr. Carson Barnett suffered stab wounds to his stomach and left hand, the latter resulting in permanent loss of feeling in his little finger.

Even though Mr. Parker has no memory of what happened that night, multiple witnesses for the Commonwealth identified the [petitioner] as the main attacker. David Gonzalez, the club's owner, testified that he witnessed the [petitioner] and another man severely beat Mr. Parker in the street as he watched the departing crowd. Mr.

2

Gonzalez saw two assailants ambush Mr. Parker, throwing him over a car and punching him approximately twenty times before the [petitioner] kicked him in the head. Three of Mr. Parker's friends also testified, and each one positively identified the [petitioner]. Every witness gave similar accounts of the attack, with the exception of a discrepancy regarding the number of assailants.[2] Each witness testified that Mr. Parker was on the ground in a defensive position while being beaten. Two witnesses specifically described the [petitioner's] blows as resembling a stabbing motion as opposed to a punching motion.[3] Another witness, Carson Barnett, testified that he saw a knife in the [petitioner's] hand. Additionally, every witness testified that they saw the [petitioner] deliberately kick Mr. Parker in the head. One witness recalled that it appeared "as if [the petitioner] was punting a football." N.T., 9/9/08, at 159.[4]

Tests on the blood-stained knife found with the [petitioner] established that the blood was, in fact, human. However, DNA test results did not match either Mr. Parker or the [petitioner].[5]

The [petitioner] took the stand and offered a much different version of the events of that night. According to his testimony, the

---

[2] Two witnesses testified that two men assaulted the victim, while two other witnesses stated that they saw three assailants.

[3] Floyd Lovelace testified that the attackers "were actually stabbing down and kicking" and that the [petitioner] "was actually [moving his hand] in a banging motion, like something was in his hand, because if you're punching you punch like this way. He was coming in a downward motion." N.T., 9/9/08, at 95, 99. Under cross-examination, Lovelace clarified that while he did not actually see a knife, he observed hand motions "as if they had a knife." *Id.* at 117. Thurman Phillips also testified to the unusual motion of the [petitioner's] hand, stating that "instead of pulling back and going forth [as if punching], . . . [the petitioner's arm] was coming up and down, you know, more of an up and down motion." *Id.* at 152.

[4] Floyd Lovelace testified, "so [the petitioner] cleared them out after they finished beating on [Mr. Parker]. He moved them over, separated them so he could have a clear view. He just stepped back. He kicked him in the face." N.T., 9/9/08, at 96. Thurman Phillips testified, "And as they cleared the site is when he had clearance to the upper part of [Mr. Parker's] body, and I seen him like – he took like two or three steps backwards . . . and gave him like a real – like a kick as if he was punting a football." N.T., 9/9/08, at 159. Carson Barnett testified, "I saw a guy standing above [Mr. Parker's] head kicking, punching." N.T., 9/9/08, at 197.

[5] Five people were stabbed that night, Mr. Parker, Mr. Lovelace, Mr. Barnett, the [petitioner], and the [petitioner's] witness, Mr. Sepulveda. The police never received a DNA sample from Mr. Barnett or Mr. Sepulveda for comparison.

3

>       bar's security personnel were pushing the patrons out of the door
>       when he heard a commotion in the crowd. The [petitioner] testified
>       that he then saw his friend, Antoine Williams, being attacked by Mr.
>       Parker. The [petitioner] claimed that in an attempt to defend his
>       friend, he punched Mr. Parker and they both fell to the ground. The
>       [petitioner] stated that as he attempted to stand back up, he "felt
>       punches coming down on [him]." N.T., 9/10/08, at 80. The
>       [petitioner] claimed that Mr. Parker held onto his jeans as he tried to
>       get away, and he merely "threw a kick at him" in an attempt to break
>       free and escape his unknown attackers. N.T., 9/10/08, at 82-83. The
>       jury did not accept the [petitioner's] version of the events.

*Commonwealth v. Carter*, No. 795-2008, slip op. at 3-7 (C.C.P. Northampton County, September 11, 2009). A jury trial proceeded before the Honorable Anthony S. Beltrami, and Mr. Carter was convicted. *Id.* at 1. A Motion for a new trial was filed and denied. *Id.* On November 14, 2008, Petitioner was sentenced to twenty (20) to forty (40) years of incarceration for the attempted murder conviction and a consecutive nine (9) to eighteen (18) years imprisonment for one count of aggravated assault. The other convictions merged for sentencing purposes. *Id.* at 1-2. Post-sentence motions were subsequently filed and dismissed.

Mr. Carter filed a timely appeal with the Pennsylvania Superior Court in which he challenged the sufficiency and the weight of the evidence supporting his convictions.[6] *See Commonwealth v. Carter*, No. 1514 EDA 2009, slip op. at 2 (Superior Court, April 26, 2010); Answer and Memorandum of Law of the District Attorney of the County of Northampton, Pennsylvania, to the Petitioner's Petition for Writ of Habeas Corpus[7] at 16. On April 26, 2010, judgment was affirmed.

---

[6]Petitioner also included a challenge to the discretionary aspects of his sentence in his P.R.App.Pro. 1925(b) statements of errors complained of on appeal. He abandoned that issue on appeal, however, and the Superior Court expressed no opinion regarding Mr. Carter's sentence. *See Commonwealth v. Carter*, No. 1514 EDA 2009, slip op. at 2 n.1 (Superior Court, April 26, 2010); Answer and Memorandum of Law of the District Attorney of the County of Northampton, Pennsylvania, to the Petitioner's Petition for Writ of Habeas Corpus ("Commonwealth's Answer") at 16.

[7]Hereinafter "Commonwealth's Answer".

*Commonwealth v. Carter*, No. 1514 EDA 2009, slip op. at 7; Commonwealth's Answer at 21. The Supreme Court of Pennsylvania denied allowance of appeal on December 15, 2010. *See Commonwealth v. Carter*, No. 359 MAL 2010, Order (Supreme Court, December 15, 2010); Commonwealth's Answer at 22.

Mr. Carter then filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§9541-46, on December 13, 2011, and another one on December 22, 2011. *See Commonwealth v. Carter*, Court of Common Pleas of Northampton County Criminal Docket Number CP-48-CR-0000795-2008 at 20. A PCRA Hearing is presently scheduled for May 30, 2012. *Id.* at 21.

On December 6, 2011, Petitioner filed the instant petition for habeas corpus relief in this Court. Mr. Carter raises the following claims:

> Ground one:
> Petitioner was denied his rights under Article 1 §9 of the Constitution of the Commonwealth of Pennsylvania and the Sixth Amendment to the Constitution of the United States of America to effective assistance of counsel in that trial counsel failed to call an expert witness in rebuttal and/or adequately and effectively argue to the jury that Petitioner was not the person who stabbed the victims as evidenced by the lack of victims' blood on Petitioner's clothing.
>
> Ground two:
> Petitioner was denied his rights under Article 1 §9 [of] the Constitution of the Commonwealth of Pennsylvania and the Sixth Amendment to the Constitution of the United States of America to effective assistance of counsel in that trial counsel failed to investigate, develop and present witnesses and evidence that Waylon "Dice" Clark was the person who stabbed the victims and not Petitioner.
>
> Ground three:
> Petitioner was denied his rights under Article 1 §9 [of] the Constitution of the Commonwealth of Pennsylvania and the Sixth

Amendment to the Constitution of the United States of America to effective assistance of counsel in that trial counsel failed to object and request a curative instruction be given to address the prosecutor's impermissible questions about the credibility of the [Petitioner's] testimony and defense.

Ground four:
    Petitioner was denied his rights under Article 1 of the Constitution of the Commonwealth of Pennsylvania and the Sixth Amendment to the Constitution of the United States of America to effective assistance of counsel in that counsel failed to seek suppression of the identification made by Thurman and Floyd.

Ground five:
    Petitioner was denied his rights under Article 1 §9 [of] the Constitution of the Commonwealth of Pennsylvania and the Sixth Amendment to the Constitution of the United States of America to effective assistance of counsel in that trial counsel failed to adequately cross examine and argue the important discrepancies between the witnesses' testimony.

Ground six:
    Petitioner was denied his rights under Article 1 §9 [of] the Constitution of the Commonwealth of Pennsylvania and the Sixth Amendment to the Constitution of the United States of America to effective assistance of counsel in that trial counsel failed to develop a foundation and request a jury charge on "self defense" and "defense of others" as to Parker.

Ground seven:
    Petitioner was deprived [of] his constitutional right to a fair trial under the 14th Amendment in that the verdict was against the weight of the evidence.

Ground eight:
    Petitioner was deprived [of] his constitutional right to a fair trial under the 14th Amendment in that there was insufficient evidence to support the verdict on conspiracy.

Ground nine:
    Petitioner was deprived [of] his constitutional rights under the 8th Amendment in that the sentence imposed was too harsh.

Petition for Writ of Habeas Corpus by a Person in State Custody[8] at 10-12. The Commonwealth asserts that Mr. Carter is not entitled to federal habeas corpus relief. *See* Commonwealth's Answer at 13.

## II. DISCUSSION

### A. Exhaustion

A federal court may not grant a writ of habeas corpus under §2254 unless the petitioner has "exhausted the remedies available in the courts of the State". 28 U.S.C. §2254(b)(1)(A). To do so, a petitioner must "fairly present" all federal claims to the highest state court before bringing them in federal court". *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002); *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights'". *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005). A claim is "fairly presented" when the same claim - i.e., the same legal theory applied to the same facts - has been presented at all available levels of the state judicial system. *Anderson v. Harless*, 459 U.S. 4, 7 (1982); *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). If a state prisoner has a right under state law that he or she may still raise "by any available procedure", the exhaustion requirement is not deemed to be satisfied, and the petitioner is, therefore, ineligible for federal habeas corpus review. 28 U.S.C. §2254(c). The burden is on the petitioner to prove that he has appropriately exhausted available state remedies on all his claims. *See Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

In limited circumstances, a federal court may stay the habeas petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the

---

[8]Hereinafter "Petition".

habeas petitioner exhausts his state remedies, the district court will lift the stay and allow the petition to proceed in federal court. *See Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). The "stay and abeyance" procedure is

> only appropriate when the district court determines there is good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless [citation omitted]. Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely. [. . .] Without time limits, petitioner could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review. Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back. *See e.g., Zarvela*, 254 F.3d at 381 ("[D]istrict courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed"). And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all.

*Id.* at 277-78. The Third Circuit has held that the *Rhines* "stay and abeyance" procedure is equally applicable when the petitioner presents only unexhausted habeas claims. *See Heleva v. Brooks*, 581 F.3d 187 (3d Cir. 2009).

Mr. Carter's PCRA petition was timely filed in the state court, and his claims are presently pending in the Court of Common Pleas of Northampton County. As Petitioner's state court remedies are not yet exhausted, his habeas petition is not properly before this Court. Additionally, because Mr. Carter is still in the process of exhausting his state court remedies, this matter does not fall within the "limited circumstances" where stay and abeyance are appropriate. As a result, I recommend that the instant habeas petition be dismissed without prejudice for failure to exhaust.

## III. RECOMMENDATION

Consistent with the above discussion, it is recommended that Petitioner's habeas application pursuant to 28 U.S.C. §2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies. It is further recommended that a finding be made that there is no probable cause to issue a certificate of appealability.[9]

BY THE COURT:

M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

By E-mail:  Hon. Berle M. Schiller
            Teri B. Himebaugh, Esq.      thimebaughesq@earthlink.net
            John L. Obrecht, Esq.         jlobrecht@verizon.net

---

[9] Petitioner is advised that he may file objections to the Report and Recommendation. *See* Local Civil Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights in this habeas action.

9